**SIGNED THIS: November 09, 2007**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LATARSHE TRINETTE BROWN, | ) | No. 07-80138 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

Before the Court is the objection to confirmation of the proposed Chapter 13 plan of the Debtor, Latarshe Brown (DEBTOR), filed by Americredit Financial Services, Inc. (AMERICREDIT), as well as AMERICREDIT'S motion for relief from the automatic stay.

*BACKGROUND*

The DEBTOR filed her Chapter 13 petition in this case on January 25, 2007. AMERICREDIT is the holder of a perfected purchase money security interest in a 2001 Ford Taurus purchased on August 14, 2004, within 910 days of the date the petition was filed. According to the retail installment contract, the DEBTOR was to make forty-eight payments beginning on September 28, 2004, each in the amount of $214.48, payable at an

interest rate of 21%.  The last payment would therefore be due on September 28, 2008.  AMERICREDIT filed its proof of claim asserting a petition date balance of $8,498.46 fully secured by the Taurus, including a prepetition arrearage of $4,424.26.  The large arrearage resulted from the DEBTOR'S failure to make plan payments in a prior Chapter 13 proceeding.

The DEBTOR filed her prior Chapter 13 petition on April 11, 2005.[1]  Her plan, confirmed without objection, provided for payments of $232 per month for thirty-six months and estimated that unsecured creditors would receive approximately 1%.  AMERICREDIT was to be paid $5,500, secured by the Ford Taurus, at 7.75%.  On January 11, 2006, the DEBTOR'S request for a 90-day moratorium due to a job loss, was granted.  On May 16, 2006, the DEBTOR, not yet having found a job, was granted a second 90-day moratorium.  The DEBTOR sought a third moratorium, alleging that she had found a new job but would not be paid until the end of July.  An order was entered granting the DEBTOR'S third moratorium, with payments to resume on September 1, 2006.  On October 17, 2006, the TRUSTEE filed a motion to dismiss for nonpayment.  The DEBTOR did not respond to the motion and the case was dismissed on November 7, 2006.  According to the TRUSTEE'S Final Report and Account, the DEBTOR'S payments totaled $1,624.  AMERICREDIT received a principal payment of $402.67 and an interest payment of $287.39.

The Amended Plan filed by the DEBTOR in the present case proposes monthly payments of $240 for forty-seven months, resulting in a projected distribution of 1% to

---

[1] Case No. 05-81726.

2

unsecured creditors. The Amended Plan splits AMERICREDIT'S secured claim into two components, proposing to pay the prepetition arrearage without interest and to pay the balance of the secured claim of $4,074.20 at the rate of $111.70 per month with interest at 10.25%. AMERICREDIT objected to confirmation, contending that it was entitled to equal fixed monthly payments in the amount of $320.18. AMERICREDIT also filed a motion for relief from the automatic stay and for preconfirmation adequate protection payments, alleging, in addition to that same argument, that the DEBTOR had failed to provide proof of insurance and that it was not receiving adequate protection payments. At the hearing on the motion on April 9, 2007, the DEBTOR represented that proof of insurance had been provided to AMERICREDIT and the Trustee reported that the DEBTOR had begun making plan payments and that he had commenced making adequate protection payments to AMERICREDIT, in accordance with this Court's standing order. The Court held a hearing on confirmation of the Amended Plan on May 14, 2007, and took the matters under advisement.[2]

AMERICREDIT'S objection to the treatment of its secured claim in the Amended Plan is three-fold: (1) that no interest is being paid on its arrearage claim; (2) that interest is being paid on the balance of its claim at the *Till* rate of 10.25% instead of the contract rate of 21%; and (3) that the plan fails to provide for fixed, equal monthly payments as required

---

[2]AMERICREDIT had filed a brief prior to the confirmation hearing. The DEBTOR was given an opportunity to file a responsive brief but declined to do so. AMERICREDIT had raised the identical issue of its right to fixed, equal monthly payments in another pending Chapter 13 case, *In re Erwin*, Case No. 07-80143. In that case, the Trustee retained an attorney and filed a brief in opposition to AMERICREDIT'S position. The Court held this case in abeyance, pending its decision in *Erwin,* which was issued on October 1, 2007. *In re Erwin,* – B.R. –, 2007 WL 2907998 (Bankr.C.D.Ill. 2007).

3

by Section 1325(a)(5)(B)(iii)(I). Based on the first two concerns, AMERICREDIT concludes that the DEBTOR improperly bifurcates its secured claim in contravention of the newly enacted "hanging paragraph." The Amended Plan, however, is flawed for a more fundamental reason and confirmation must be denied.

*ANALYSIS*

A Chapter 13 debtor is vested with several powers to modify, in a plan, the rights that creditors could assert outside of bankruptcy, including a general power to modify the rights of holders of secured claims. 11 U.S.C. § 1322(b)(2). A debtor may propose to cure any prepetition default in a plan or, alternatively, to compel a waiver of any default. 11 U.S.C. § 1322(b)(3). With respect to secured or unsecured claims on which, according to the contract evidencing the debt, the last payment is due after the plan is scheduled to end, the debtor's plan may propose to cure any prepetition default while the regular contract payments are paid as they come due postpetition. 11 U.S.C. § 1322(b)(5). These provisions of Section 1322(b) were not amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which went into general effect on October 17, 2005.

Prior to the enactment of BAPCPA, a debtor in a Chapter 13 case had four options in dealing with secured claims. Under the first three options, contained in Section 1325(a)(5), a debtor may (1) obtain the creditor's acceptance of the plan; (2) cram down the secured creditor and pay the present value of the allowed secured claim through the plan; or (3) surrender the collateral. A fourth option, pursuant to either Section 1322(b)(3) or (b)(5), permits a debtor to cure a default. Section 1322(b)(5) authorizes a debtor to provide for the curing of a default and the maintenance of payments on a claim on which the last

4

payment is due after the date of the final payment to be made under the plan.[3]  11 U.S.C. § 1322 (b)(5).  This provision is inapplicable to AMERICREDIT'S claim.

The second option was curtailed by the so-called hanging paragraph appended to Section 1325(a)(5) by BAPCPA, which prohibits bifurcation of a secured debt incurred within the 910-day period preceding the filing of the petition if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use.[4]  For cases filed after BAPCPA's effective date, stripdown of the claims of "910 creditors" is thus prohibited.

Contrary to AMERICREDIT'S characterization, the DEBTOR is not bifurcating its undersecured claim pursuant to Section 506(a), into a "secured" component and an "unsecured" component, in violation of the "hanging paragraph."  Rather, the Amended Plan bifurcates the claim into a prepetiton part and a postpetition part, both fully secured by the Taurus.  It proposes to cure the prepetition default by paying the arrearage, while at the same time paying the petition date balance not in arrears on a modified basis, at a reduced installment rate of $111.70 per month and a reduced interest rate of 10.25%.  This inventive proposal conflates the concepts of "modification" and "cure."  Although the terms "modify" and "cure" are not defined in the Bankruptcy Code, they are not cumulative and overlapping but have separate and distinct meanings.  *Matter of Clark*, 738 F.2d 869 (7th Cir. 1984); *In re Litton*, 330 F.3d 636 (4th Cir. 2003).  Explaining the concept

---

[3]Section 1322(b)(3) permits a cure of a default in a prepetition obligation which does not extend beyond the term of the plan; Section 1322(b)(5) provides for the cure of a prepetition obligation which extends beyond the term of the plan.

[4]Because the added provision following Section 1325(a)(9) was not given an alpha-numeric designation, it has been labeled the "hanging paragraph."

of "cure" in a Chapter 13 plan, the court in *Clark* stated:

> [A]s the term relates to defaults, "cure" means to restore matters to the *status quo ante*. (Citations omitted.) Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, "cure" is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of "cure," as used in Section 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*.

Implicit in the concept of curing a payment arrearage, is de-acceleration of the debt and reinstatement of the contract payment terms. *Id.* at 872. The DEBTOR, however, is not proposing to resume the regular contract payments. Instead, she combines a cure of the prepetition arrearage with modification of the postpetition payments as to the payment amount, interest rate and length of the repayment period, a combination that is impermissible.

The Bankruptcy Code does not authorize a Chapter 13 debtor to cure a default and simultaneously modify the secured claim. *In re Hussain*, 250 B.R. 502 (Bankr.D.N.J. 2000). The DEBTOR must choose one or the other. The DEBTOR could have proposed a plan which provided for the payment of all future installment payments, the cure of all delinquent payments, and the payment of applicable interest.[5] *In re Moffett*, 356 F.3d 518 (4th Cir. 2004); *see also In re Pluta*, 200 B.R. 740 (Bankr.D.Mass. 1996). But that is not the

---

[5] Whether AMERICREDIT would be entitled to interest on the arrearage is determined by the terms of the retail installment contract and Illinois law. Section 1322(e), added by the Bankruptcy Reform Act of 1994 (overturning *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)), which applies only in the event of a cure, provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

Two conditions must be met before interest can be required as part of a cure. Interest on arrearages must be expressly provided for in the contract and such interest cannot be prohibited by state law. For example, the Consumer Installment Loan Act contains a general prohibition against compounded interest on interest-bearing loans. 205 ILCS 670/15(e)(2).

plan before the Court. The DEBTOR proposes to make lower payments to AMERICREDIT over a longer period than the contract term. As this Court noted in *In re Pryor*, 341 B.R. 648, 651-52 (Bankr.C.D.Ill. 2006), any alteration of the payment terms triggers the present value requirement of Section 1325(a)(5)(B)(ii).

Alternatively, the DEBTOR could have proposed a plan that modified the claim by paying the full balance of $8,498.46, with interest on that full balance at the *Till* rate pursuant to Section 1325(a)(5)(B). *In re Morris,* 370 B.R. 796 (E.D.Wis. 2007). Because it provides for a cure without maintenance of the contract payments, and modifies AMERICREDIT'S claim but fails to fully comply with Section 1325(a)(5)(B), the Amended Plan is not confirmable. AMERICREDIT'S objection is thus sustainable for reasons unrelated to the changes made by BAPCPA. Confirmation of the Amended Plan will be denied.[6]

AMERICREDIT'S Motion to Modify Automatic Stay or for Adequate Protection should also be denied, in light of the fact that the concern over insurance appears to have been satisfied and that AMERICREDIT is receiving adequate protection payments from the Chapter 13 Trustee.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[6] AMERICREDIT'S argument that a Chapter 13 plan that does not provide for payment of secured claims in equal monthly fixed amounts cannot be confirmed, was rejected by this Court. *In re Erwin*, – B.R. –, 2007 WL 2907998 (Bankr.C.D.Ill. 2007). In *Erwin*, this Court held that a plan that did not "backload" or provide for any graduated payments did not violate the equal payment provision of Section 1325(a)(5)(B)(iii)(I). Here, as in *Erwin*, the DEBTOR'S plan provides for the DEBTOR to make equal monthly payments of $240 for the duration of the plan.